# EXHIBIT B

**FIRST AMENDMENT TO**
**FOURTH AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**MERCURY PUBLIC AFFAIRS LLC**

This First Amendment (this "**Amendment**") is entered into as of April 28, 2017, by and among **MPA HOLDINGS INC.**, a Delaware corporation (the "**Class A Member**") and **HIGH STAKES HOLDINGS CO. LLC**, a Delaware limited liability company (the "**Class B Member**").

**W I T N E S S E T H :**

**WHEREAS**, the Class A Member, the Class B Member, Mercury Public Affairs LLC, a Delaware limited liability company (the "**Company**"), and the individuals set forth as Principals on the signature pages thereto, have previously entered into that certain Fourth Amended and Restated Limited Liability Company Agreement, dated as of December 31, 2013 (the "**LLC Agreement**"), and

**WHEREAS**, the Class A Member and the Class B Member desire to enter into this Amendment in order to modify the LLC Agreement as set forth herein.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the mutual promises and covenants contained herein, the parties hereto, intending to be legally bound, agree as follows:

**AGREEMENT**

1.      <u>Defined Terms</u>.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the LLC Agreement.

2.      <u>Amendments</u>.    The following amendments are hereby made to the LLC Agreement:

(a)      <u>Section 3.4(a)</u> of the LLC Agreement is hereby amended by adding the following sentence to the end of such section:

"The distributions of Operating Cash Flow described in this Section 3.4(a) shall be referred to as "**OCF Distributions**" herein."

(b)      <u>Section 11.2</u> of the LLC Agreement is hereby amended and restated in its entirety to read as follows:

"**Section 11.2      Ownership of the Class B Member**.  The membership interests of the Class B Member (the "**Executive Interests**") are owned as of the date

1793897.4 05337-0005-053

hereof by the Principals.  The parties hereto agree that unless consented to in writing by the Class A Member, (i) no additional Persons may be admitted to the Class B Member as members and (ii) no Executive Interests shall be issued, sold, transferred, assigned, pledged or otherwise disposed of, in whole or in part, directly or indirectly, to any Person other than a Principal or the Class B Member; provided, however, that in the event the Class B Member desires to admit a full-time employee of the Company to the Class B Member and issue Executive Interests to such Person, the Principals shall provide to the Class A Member the results of a background check conducted using a reputable company (for example, Kroll, Inc.) on such Person, and the Class A Member shall only be permitted to reject the admission of such Person to the Class B Member and the issuance of Executive Interests to such Person if, in the reasonable judgment of the Class A Member, it is not in the best interests of the Omnicom Group to be associated with such Person for reasons related to his or her character.  The Class A Member shall have 15 days following receipt of the results of a background check to approve or reject the admission of such Person to the Class B Member.  If the Class A Member fails to respond within 15 days of receipt of the results of the background check, the Class A Member will have been deemed to have approved of the admission of such Person to the Class B Member."

(c)     Section 11.3 of the LLC Agreement is hereby amended by adding the following sentence to the end of such section:

"Any Principal whose employment with the Company is terminated for any reason whatsoever shall be referred to herein as a "**Terminated Principal**"."

(d)     A new Section 11.4 of the LLC Agreement is hereby added as follows:

"**Section 11.4     Buyout of Terminated Principals**.

(a)     Class A Member Payments.  The Class B Member may require, upon provision to the Class A Member of all agreements governing the termination of the Terminated Principal and any payments related thereto, that the Class A Member make payments to such Terminated Principal equal to such Terminated Principal's pro rata share (as of his or her termination date) of OCF Distributions made to the Class B Member for a period of 5 years following his or her termination date; provided, however, that the Class B Member may only require that the Class A Member make such payments with respect to a Terminated Principal if such Terminated Principal (i) was a member of the Class B Member for at least 5 years and (ii) was terminated for a reason other than for Cause as defined in the employment agreement of such Terminated Principal, or, if no such employment agreement exists, in accordance with the definition set forth on **Schedule 11.4(a)** hereto.  Prior to the commencement of any such payments by the Class A Member, the Terminated Principal shall sign a restrictive covenant agreement, in form and substance satisfactory to the Class A Member, containing restrictions substantially similar to those contained in Section 7.3 hereof and continuing for the period during which the Class A Member is making such payments to the Terminated Principal.  The Company shall indemnify the Class A Member for any additional cost or loss

2

associated with the payments made by the Class A Member pursuant to this <u>Section 11.4(a)</u> ("**Loss Amount**").  The parties shall characterize any payment by the Class A Member of any Loss Amount as a deemed capital contribution to the Company plus the incurrence by the Company of such Loss.

      (b)        <u>Change in Member Units; Amendment</u>.  In the event that the Class A Member is obligated to make payments to a Terminated Principal pursuant to Section 11.4(a) above, the Percentage Interest of the Class B Member (and the corresponding number of Class B Units held by the Class B Member) shall be decreased by the percentage amount determined by multiplying (i) the then-current Percentage Interest of the Class B Member in the Company by (ii) the quotient determined by dividing (A) the number of Executive Interests held by such Terminated Principal immediately prior to his or her termination by (B) the total number of Executive Interests held by all holders of Executive Interests in the Class B Member immediately prior to such termination (such change in Percentage Interest the "**Buyout Percentage**" and the number of Class B Units represented by such Buyout Percentage, the "**Buyout Units**").  Simultaneously therewith, the Percentage Interest of the Class A Member shall be increased by the amount of the Buyout Percentage, and the number of Class B Units held by the Class A Member shall be increased by the number of Buyout Units (and, following such increase, such Class B Units shall be converted into an equal number of Class A Units); provided, however, that in the event that any such increase would cause the Class A Member's Percentage Interest to become greater than 70%, the Buyout Percentage (and the corresponding number of Buyout Units) shall be limited to that percentage that would result in the Class A Member having a Percentage Interest of no greater than 70%, and the payments made by the Class A Member to the Terminated Principal pursuant to Section 11.4(a) shall be limited proportionally.  In the event that any calculation of Buyout Percentage and Buyout Units would result in the Buyout Units including fractional Class B Units, the number of Class B Units comprising the Buyout Units shall be rounded up or down, as applicable, such that none of the Buyout Units include fractional Class B Units and neither the Class A Member nor the Class B Member holds fractional Class B Units following implementation of this Section 11.4(b).  The payments made by the Class A Member to a Terminated Principal and the corresponding adjustments to the Members' Percentage Interests and Membership Units contemplated by Section 11.4(a) and this Section 11.4(b) shall be treated as a deemed purchase by the Class A Member of the applicable Buyout Units, with an allocable portion of the Capital Percentage Interest of such Buyout Units being transferred to the Class A Member in connection therewith.  The parties hereto agree to amend this Agreement to reflect such changes in Percentage Interest and Membership Units in accordance with this Section 11.4(b), with such amendment to be effective prior to the first date on which the Class A Member makes a payment to the Terminated Principal.  The Class B Member shall not be entitled to any increase in Percentage Interest or Membership Units upon completion of the Class A Member's payments to the Terminated Principal."

3

(e)      Section 13.1 of the LLC Agreement, solely with respect to the addresses for the giving of notice to the Class A Member, the Class B Member and the Company, is hereby amended to read as follows with respect to such addresses:

"If to the Class A Member, to:

c/o The DAS Group of Companies
437 Madison Avenue
New York, New York 10022
Attention: General Counsel

with a copy to:

Davis & Gilbert LLP
1740 Broadway
New York, New York 10019
Attention: Brad J. Schwartzberg, Esq."

and

"If to the Class B Member, to:

c/o Mercury Public Affairs LLC
509 Guisando de Aliva
Suite 100
Tampa, Florida  33613
Attention: Kieran Mahoney

with a copy to:

Moses & Singer LLP
405 Lexington Avenue
New York, New York 10174
Attention: Jeffrey M. Davis, Esq."

and

"If to the Company, to:

Mercury Public Affairs LLC
509 Guisando de Aliva
Suite 100
Tampa, Florida  33613
Attention: Kieran Mahoney

1793897.4 05337-0005-053

with a copy to:

> Davis & Gilbert LLP
> 1740 Broadway
> New York, New York 10019
> Attention: Brad J. Schwartzberg, Esq."

(f)    <u>Annex A</u> of the LLC Agreement is hereby amended and restated in its entirety as set forth in **<u>Exhibit A</u>** to this Amendment.

(g)    A new <u>Schedule 11.4(a)</u> to the LLC Agreement is hereby added as set forth in **<u>Exhibit B</u>** to this Amendment.

3.    <u>LLC Agreement References</u>.  All references to the LLC Agreement within the LLC Agreement shall hereafter be deemed to be references to the LLC Agreement as amended by this Amendment.

4.    <u>No Other Modifications</u>.  Except as expressly amended herein, all of the terms and provisions of the LLC Agreement shall remain unmodified and in full force and effect.

5.    <u>Counterparts and Facsimile</u>.  This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Any signature page delivered by facsimile or electronic image transmission (including in the form of a PDF file) shall be binding to the same extent as an original signature page.

*Signature Page Follows*

1793897.4 05337-0005-053

**IN WITNESS WHEREOF,** the undersigned have executed this Amendment to the Fourth Amended and Restated Limited Liability Company Agreement as of the day and year first above written.

**MPA HOLDINGS INC.,** the Class A Member and Managing Member

By: _____
Name: Craig Gass
Title: Secretary

**HIGH STAKES HOLDINGS CO. LLC,** the Class B Member

By: _____
Name:
Title:

**IN WITNESS WHEREOF,** the undersigned have executed this Amendment to the Fourth Amended and Restated Limited Liability Company Agreement as of the day and year first above written.

> **MPA HOLDINGS INC.,** the Class A Member and Managing Member
>
> **By:** _____
>          **Name:**
>          **Title:**
>
> **HIGH STAKES HOLDINGS CO. LLC,** the Class B Member
>
> **By:** _____
>          **Name:** KieRAN MAHoNey
>          **Title:**

**Exhibit A**

**<u>Annex  A</u>**

**<u>Principals</u>**

Fabian Nunez

Kieran Mahoney

Kirill Goncharenko

Michael McKeon

Thomas Doherty

Mike Duhaime

Vin Weber

Stefan Friedman

Morris Reid

Ashley Walker

Michael Soliman

**Exhibit B**

**Schedule 11.4(a)**

The term "**Cause**" shall be limited to the following grounds:

(i)      the employee's failure or refusal (x) to materially perform his or her duties and responsibilities as set forth in the employee's employment agreement, offer letter or other applicable employment documentation, (y) to abide by the reasonable directives of the Managing Member and/or the Chief Executive Officer of the Company (or other officer of the Company to whom the employee reports), or (z) to devote all of his or her business time and attention exclusively to the business and affairs of the Company in accordance with the terms hereof, in each case if such failure or refusal is not cured (if curable) within 20 days after written notice thereof to the employee by the Company;

(ii)      the willful misappropriation of the funds or property of the Company;

(iii)      the use of alcohol or illegal drugs, materially interfering with the performance of the employee's terms of employment, continuing after written warning;

(iv)      the indictment, arrest or conviction in a court of law for, or the entering of a plea of guilty to, no contest to or nolo contendere to, a felony or any crime involving moral turpitude, bribery, fraud, dishonesty, embezzlement, theft, or engaging in any act which is a violation of any law or regulation protecting the rights of employees;

(v)      the material nonconformance with the significant standard business practices and policies of the Company, DAS and Omnicom, including without limitation, policies against bribery, racial or sexual discrimination or harassment, the Grant of Authority and the Omnicom Code of Conduct;

(vi)      the commission in bad faith by the employee of any act which materially injures or could reasonably be expected to materially injure the reputation, business or business relationships of the Company or any Affiliate;

(vii)      the gross or habitual misconduct or gross or habitual negligence by the employee in the performance of his or her duties; and

(viii)      any breach (not covered by any of the clauses (i) through (vii) above) of any material provision of the employee's employment agreement, offer letter or other applicable employment documentation, if such breach is not cured (if curable) within 20 days after written notice thereof to the employee by the Company.