# EXHIBIT F

Kirill Goncharenko
Protective Covenant Agreement

March 31, 2008

Mercury Public Affairs LLC
137 Fifth Avenue – Third Floor
New York, New York 10010

DAS Holdings Inc.
c/o Omnicom Group Inc.
437 Madison Avenue
New York, New York 10022

Ladies and Gentlemen:

1. **General.** Pursuant to a Membership Interest Purchase Agreement dated as of October 1, 2003, as thereafter amended (the "**2003 Purchase Agreement**"), Public Relations Development LLC, a Delaware limited liability company ("**PRD**"), acquired from Mahstrigon Holdings, LLC, f/k/a Mercury Public Affairs, LLC, a New York limited liability company ("**MPA**"), 70% of the issued and outstanding membership interests in Mercury Public Affairs LLC, f/k/a Mercury Public Acquisition LLC, a Delaware limited liability company (the "**Company**"). Pursuant to a Membership Interest Purchase Agreement of even date herewith (the "**2008 Purchase Agreement**"; together with the 2003 Purchase Agreement, the "**Purchase Agreements**"), DAS Holdings Inc., a Delaware corporation ("**DASH**"), and an Affiliate of PRD, acquired from MPA, 30% of the issued and outstanding membership interests of the Company, such that immediately after giving effect to such purchase, all of the issued and outstanding membership interests in the Company are now owned by companies controlled by Omnicom Group Inc. ("**Omnicom**"). I am a member of MPA and as such have an indirect interest in the purchase price paid and to be paid under the 2003 Purchase Agreement and 2008 Purchase Agreement. The execution and delivery of this Agreement (this "**Agreement**"), and my employment agreement, as amended, entered into concurrently herewith, is a condition of closing under the 2008 Purchase Agreement and incident to such acquisition transaction. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the 2008 Purchase Agreement.

2. **Non-Solicitation/Non-Servicing Agreement.**

    (a) I hereby covenant and agree that from the date hereof through the later of (x) December 31, 2012 and (y) two years after the date I cease to be a full-time employee of the Company (the "**Restricted Period**"), I will not, as an individual, employee, consultant, independent contractor, partner, shareholder, member or in association with any other Person, except on behalf of the Company, directly or indirectly, and regardless of my continuing to be employed by the Company or the reason for my ceasing to be employed by the Company:

1

(i) attempt in any manner to solicit or accept from any client business of the type performed by the Company or to persuade any client to cease to do business or to reduce the amount of business which any such client has customarily done or is reasonably expected to do with the Company, whether or not the relationship between the Company and such client was originally established in whole or in part through my efforts;

(ii) employ as an employee or retain as a consultant any person, firm or entity who is then or at any time during the preceding twelve months was an employee of or exclusive consultant to the Company, or persuade or attempt to persuade any employee of or exclusive consultant to the Company to leave the employ of the Company or to become employed as an employee or retained as a consultant by any other Person; or

(iii) render to or for any client any services of the type which are rendered by the Company.

As used herein, the term "**Company**" shall include any subsidiaries of the Company, if any, and the term "**client**" shall mean (i) anyone who is a client of the Company at the time of the termination of my employment, or if my employment shall not have terminated, at the time of the alleged prohibited conduct (any such applicable date being called the "**Determination Date**"); (ii) anyone who was a client of the Company (and its predecessor) at any time during the one year period immediately preceding the Determination Date; (iii) any prospective client to whom the Company (and its predecessor) had made a new business presentation (or similar offering of services) at any time during the one year period immediately preceding the Determination Date; and (iv) any prospective client to whom the Company made a new business presentation (or similar offering of services) at any time within six months after my employment with the Company terminated (but only if initial discussions between the Company and such prospective client relating to the rendering of services occurred prior to the Determination Date, and only if I participated in or supervised such discussions or the preparation thereof). For purposes of this Agreement, it is agreed that a general mailing or an incidental contact shall not be deemed a "new business presentation or similar offering of services" or a "discussion". In addition, "client" shall also include any clients of other Omnicom companies to whom I rendered services (including supervisory services) at any time during the one-year period prior to the Determination Date. In addition, if the client is part of a group of companies which conducts business through more than one entity, division or operating unit, whether or not separately incorporated (a "**Client Group**"), the term "client" as used herein shall also include each entity, division and operating unit of the Client Group, where the same management group of the Client Group has the decision making authority with respect to contracting for services of the type rendered by the Company.

3. **Acknowledgements**.

(a) I acknowledge (i) that my position and employment with the Company result from the transaction contemplated by the Purchase Agreements, (ii) that the business and the

2

industry in which the Company competes is highly competitive; (iii) that as a key executive of the Company and its predecessor I have participated in and will continue to participate in the servicing of current clients and/or the solicitation of prospective clients, through which, among other things, I have obtained and will continue to obtain knowledge of the "know-how" and business practices of the Company (and its predecessor), in which matters the Company has a substantial proprietary interest; (iv) that my employment with the Company requires the performance of services which are of a special, unique, extraordinary and intellectual character, and my position with the Company (and its predecessor) places me in a position of confidence and trust with the clients and employees of the Company (and its predecessor); and (v) that my rendering of services to the clients of the Company (and its predecessor) necessarily requires the disclosure to me of, and the Company will so disclose to me, confidential information (as defined in paragraph 4) of the Company. In the course of my employment with the Company (and its predecessor), I have and will continue to develop a personal relationship with the clients of the Company (and its predecessor) and a knowledge of those clients' affairs and requirements, and the relationship of the Company (and its predecessor) with its established clientele will therefore be placed in my hands in confidence and trust. I consequently agree that it is a legitimate interest of the Company and reasonable and necessary for the protection of the confidential information, goodwill and business of the Company, which is valuable to the Company, that I make the covenants contained herein and that the Company would not have entered into the Purchase Agreements unless the covenants set forth in this Agreement were agreed to by me.

(b) The parties acknowledge that (i) the type and periods of restriction imposed in the provisions of paragraph 2 above are fair and reasonable and are reasonably required in order to protect and maintain the proprietary interests of the Company described above, other legitimate business interests of the Company and the goodwill associated with the business of the Company, including without limitation, the interest in the business acquired by the Company pursuant to the Purchase Agreements, (ii) I will engage in the Company's business throughout the United States and (iii) the time, scope, geographic area and other provisions of paragraph 2 above have been specifically negotiated by sophisticated commercial parties, represented by legal counsel, and are given as an integral part of the transactions contemplated by the Purchase Agreements. It is further understood and agreed that the clients of the Company may be serviced from any location and accordingly it is reasonable that the covenants set forth herein are not limited by narrow geographic area but generally by the location of such clients and potential clients. I specifically acknowledge that my being restricted from servicing clients as contemplated by this Agreement will not prevent me from being employed or earning a livelihood in the type of business conducted by the Company. In the event that any covenant contained in this Agreement shall be determined by any court or other tribunal of competent jurisdiction to be unenforceable by reason of its extending for too great a period of time or over too great a geographical area or by reason of its being too extensive in any other respect, (x) such covenant shall be interpreted to extend only over the maximum period of time for which it may be enforceable and/or over the maximum geographical area as to which it may be enforceable and/or to the maximum extent in all other respects as to which it may be enforceable, all as determined by such court or other tribunal making such determination, and (y) in its reduced form, such covenant shall then be enforceable, but such reduced form of covenant shall only apply with respect to the operation of such covenant in the particular jurisdiction in or for which

3

such adjudication is made. In the event any provision of this Agreement is found to be void and unenforceable by a court or other tribunal of competent jurisdiction, the remaining provisions of this Agreement shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had never been a part hereof or had been severed and deleted or reformed to be enforceable. Each of the covenants and agreements contained in this Agreement (collectively, the "**Protective Covenants**") is separate, distinct and severable. All rights, remedies and benefits expressly provided for in this Agreement are cumulative and are not exclusive of any rights, remedies or benefits provided for by law, this Agreement or otherwise, and the exercise of any remedy by a party hereto shall not be deemed an election to the exclusion of any other remedy (any such claim by the other party being hereby waived). The existence of any claim, demand, action or cause of action that I have against the Company, DASH, or any Affiliate thereof, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of each Protective Covenant or any other provision or provisions of this Agreement. The unenforceability of any Protective Covenant shall not affect the validity or enforceability of any other Protective Covenant or any other provision or provisions of this Agreement. The temporal duration of the Protective Covenants shall not expire, and shall be tolled, during any period in which I am in violation of any of the Protective Covenants, and all restrictions shall automatically be extended by the period of my violation of any such restrictions.

4.      **Confidentiality Agreement.** I hereby covenant and agree that in the course of my employment with the Company I will acquire and have access to the confidential or proprietary information about the Company and/or its clients, including but not limited to, trade secrets, methods, technical data, models, passwords, access to computer files, financial information and records, computer software programs, agreements and/or contracts between the Company and its clients, client contacts, client preferences, marketing and/or creative policies and ideas, media relations and public relations strategies, campaigns and materials, lobbying and governmental affairs strategies, campaigns and materials, issue and advocacy advertising ideas, public opinion research strategies, issue/crisis/strategic counsel strategies, politics, grass roots political methods and strategies, campaign management strategies and campaigns, budgets, concepts, strategies, methods of operation, financial or business projections of the Company, and information about or received from clients and other companies with which the Company does business (collectively, "**confidential information**"). I am aware that the confidential information is not readily available to the public and accordingly, I agree that I will not at any time (whether during or after my employment with the Company or its predecessor) disclose to anyone (other than my counsel in the course of a dispute arising from the alleged disclosure of confidential information or as required by law) any confidential information, or utilize such confidential information for my own benefit, or for the benefit of third parties. I agree that the foregoing restrictions shall apply whether or not any such information is marked "confidential" and regardless of the form of the information. The term "confidential information" does not include information which (i) becomes generally available to the public other than by breach of this provision, or (ii) I learn from a third party who is not under an obligation of confidence to the Company or a client of the Company. In the event that I become legally required to disclose any confidential information, I will provide the Company with prompt notice thereof so that the Company may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this paragraph 4 to permit a particular disclosure. In the event that such

protective order or other remedy is not obtained, or that the Company waives compliance with the provisions of this paragraph 4 to permit a particular disclosure, I will furnish only that portion of the confidential information which I am legally required to disclose and, at the Company's expense, will cooperate with the efforts of the Company to obtain a protective order or other reliable assurance that confidential treatment will be accorded the confidential information. I further agree that all memoranda, disks, files, notes, records or other documents, whether in electronic form or hard copy (collectively, the "**material**") compiled by me or made available to me during my employment with the Company and/or its predecessor (whether or not the material constitutes or contains confidential information), and in connection with the performance of my duties hereunder, shall be the property of the Company and shall be delivered to the Company on the termination of my employment with the Company or at any other time upon request. Except in connection with my employment with the Company, I agree that I will not make or retain copies or excerpts of the material.

5. **Specific Performance.** I acknowledge that a breach of the covenants contained in this Agreement will cause DASH and the Company irreparable damage, the exact amount of which will be impossible or difficult to ascertain, and that the remedies at law for any such breach will be inadequate. Accordingly, I agree that each of DASH and the Company shall, in addition to all other available remedies (including without limitation seeking such damages as it can show it has sustained by reason of such breach), be entitled to specific performance and injunctive relief without being required to post bond or other security and without having to prove the inadequacy of the available remedies at law.

6. **Assignment.** The parties hereto agree that DASH and the Company shall have the right to assign this Agreement, and accordingly, this Agreement shall inure to the benefit of, and may be enforced by, any and all successors and assigns of the DASH and the Company, including, without limitation, by asset assignment, stock sale, merger, consolidation or other corporate reorganization. My obligations under this Agreement are personal to me, and I shall not have the right to assign or otherwise transfer my obligations hereunder. Any purported assignment or transfer by me shall be void and ineffective.

7. **Notice During Restricted Period.** Prior to accepting employment with any person, firm or entity during the Restricted Period, I shall notify the prospective employer in writing of my obligations pursuant to this Agreement and shall simultaneously provide a copy of such notice to the Company and DASH.

8. **Governing Law.** This Agreement, and all issues or matters related to this Agreement, shall be governed by, enforced under, and construed in accordance with the laws of the State of New York without regard to any conflicts or conflicts of law principles in the State of New York that would result in the application of the law of any other jurisdiction.

9. **Headings.** The headings contained in this Agreement are for reference purposes only, and shall not affect the meaning or interpretation of this Agreement.

10. **Modification.** This Agreement may not be changed orally, but only by an agreement in writing signed by all of the parties hereto.

11. **No Strict Construction**. The language used in this Agreement will be deemed to be the language chosen by all of the parties hereto to express their mutual intent, and no rule of law or contract interpretation that provides that in the case of ambiguity or uncertainty a provision should be construed against the draftsman will be applied against any party hereto.

12. **Miscellaneous**. Nothing contained in this Agreement shall affect any confidentiality agreements, non-solicitation/non-servicing agreements or any other type of restrictive covenant agreement that I have previously or hereafter enter into with Omnicom or one of its Affiliates. No oral understandings, oral statements, oral promises or oral inducements exist.

13. **Counterparts**. This Agreement may be executed in two or more counterparts, or by facsimile transmission, each of which shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

Yours very truly,

*/s/ Kirill Goncharenko*

Kirill Goncharenko

AGREED TO AND ACCEPTED:

MERCURY PUBLIC AFFAIRS LLC

By: _____
     Deborah E. Zangara
     Secretary

DAS HOLDINGS INC.

By: _____
     Deborah E. Zangara
     Secretary

Yours very truly,

_____
Kirill Goncharenko

AGREED TO AND ACCEPTED:

**MERCURY PUBLIC AFFAIRS LLC**

By: _____
Deborah E. Zangara
Secretary

**DAS HOLDINGS INC.**

By: _____
Deborah E. Zangara
Secretary