# EXHIBIT C

Electronically FILED by Superior Court of California, County of Los Angeles on 10/05/2021 05:35 PM Sherri R. Carter, Executive Officer/Clerk of Court, by Y. Tarasyuk,Deputy Clerk
Case 1:21-cv-08300-VSB   Document 12-4   Filed 10/13/21   Page 2 of 12
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Steven Kleifield

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
GREGORY P. KORN (SBN 205306)
  gkorn@kwikhlaw.com
AARON C. LISKIN (SBN 264268)
  aliskin@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiffs
FABIAN NUNEZ, KIRILL GONCHARENKO,
ACTUM CA OPCO LLC, and ACTUM UK
OPCO LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| FABIAN NUNEZ, an individual; KIRILL GONCHARENKO, an individual; ACTUM CA OPCO LLC, a Delaware limited liability company; and ACTUM UK OPCO LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>HIGH STAKES HOLDING CO. LLC, a Delaware limited liability company; and DOES 1 through 50,<br><br>    Defendant. | Case No. 21STCV36850<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF**<br>**(2) PERMANENT INJUNCTION**<br><br>Trial Date:    None Set |

Plaintiffs FABIAN NUNEZ, KIRILL GONCHARENKO, ACTUM CA OPCO LLC, and ACTUM UK OPCO LLC, for their Complaint against Defendant HIGH STAKES HOLDING CO. LLC, and DOES 1-50, inclusive, allege as follows:

**INTRODUCTION**

1. Plaintiffs Fabian Nunez and Kirill Goncharenko ("Plaintiffs")[1] are highly regarded public affairs experts who were employed by Defendant Mercury Public Affairs LLC ("Mercury") for many years, and currently hold membership interests in Mercury's minority owner, Defendant High Stakes Holding Co. LLC ("High Stakes" or "Defendant").

2. Plaintiffs recently ended their employment relationships with Mercury and now are continuing doing business through Plaintiff Actum CA Opco LLC (the "California Newco") and Plaintiff Actum UK Opco LLC (the "London Newco")—entities located in California and London, and which the Parties have commonly referred to as the "Newcos." While these Newcos conduct the same type of business as Mercury, several members of High Stakes agreed with Mercury, in writing and through their conduct, that Plaintiffs (and other members of High Stakes) could separately form, own, and operate these Newcos since as early as 2013. Plaintiffs now simply intend to continue operating under the Newcos, albeit under a new company name. But Plaintiffs are concerned that Mercury may coerce or intimidate the members of High Stakes into attempting to enforce an unlawful restrictive covenant contained in the operating agreement for High Stakes to stop Plaintiffs from working in the public relations industry, even if Plaintiffs are doing so under the existing Newcos that Mercury, and members of High Stakes, agreed Plaintiffs could separately own and operate. Plaintiffs now seek a declaration from the Court that they are not acting in violation of the operating agreement for High Stakes by operating under the auspices of the Newcos.

3. While Plaintiffs are not acting in violation of any restrictive covenant, that covenant is illegal in any event and cannot be enforced. California has long recognized the

---

[1] Plaintiffs Actum CA Opco LLC and Actum UK Opco LLC are not included in the definition of "Plaintiffs," as used herein, unless otherwise specified. Instead, these entities will be collectively referred to as "Newcos."

1 important public policy in prohibiting employers from enforcing provisions that restrain a person
2 from engaging in their chosen profession.  Such policy is codified by statutes intended to promote
3 "open competition and employee mobility" and to protect the right of all Californians to "pursue
4 any lawful employment and enterprise of their choice" and "engage in businesses and occupations
5 of their choosing."  *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008).

6       4. The restrictive covenant at issue violates California public policy and constitutes an
7 illegal agreement under California law.  Accordingly, Plaintiffs seek a judicial determination that
8 the restrictive covenant in the Second Amended and Restated Limited Liability Company
9 Agreement of High Stakes, dated December 18, 2018, as amended (the "High Stakes Operating
10 Agreement") is void or unenforceable and that High Stakes is prohibited from enforcing it.
11 Plaintiffs seek a further declaration that High Stakes cannot force Plaintiffs to withdraw as
12 members of High Stakes without consideration for their membership interests, simply because
13 they have chosen to work for different employers.

14 **THE PARTIES**

15       5. Plaintiff FABIAN NUNEZ ("Nunez") is an individual residing in the State of
16 California, County of Los Angeles, and a member of High Stakes.

17       6. Plaintiff KIRILL GONCHARENKO ("Goncharenko") is an individual residing in
18 the State of California, County of Los Angeles, and a member of High Stakes.

19       7. Plaintiff ACTUM CA OPCO LLC is, and at all relevant times mentioned herein
20 was, a limited liability company organized and existing under the laws of the State of Delaware.

21       8. Plaintiff ACTUM UK OPCO LLC is, and at all relevant times mentioned herein
22 was, a limited liability company organized and existing under the laws of the State of Delaware.

23       9. Defendant HIGH STAKES is, and at all relevant times mentioned herein was, a
24 limited liability company organized and existing under the laws of the State of Delaware, with
25 members who reside in the State of California, and which conducts extensive business in the State
26 of California.

27       10. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as
28 DOES 1 through 50, inclusive, and therefore sue such Defendants by such fictitious names.

Plaintiffs are informed and believe and thereon allege that each Defendant is responsible in some manner for the damages suffered by Plaintiffs as alleged in this Complaint.  Plaintiffs will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same have been ascertained.

## JURISDICTION AND VENUE

11. Jurisdiction is proper in the Superior Court of the State of California for the County of Los Angeles pursuant to California Code of Civil Procedure Section 410.10.

12. Venue is proper in Los Angeles County, California pursuant to California Code of Civil Procedure Section 392, *et seq.* because a substantial portion of the transactions and wrongs complained of herein occurred in this County, and Defendant has received substantial compensation by doing business here and engaging in numerous activities that had an effect in this County.

## GENERAL ALLEGATIONS

### A. History of Mercury and High Stakes

13. Mercury was founded in 1999 by Plaintiff Goncharenko and Kieran Mahoney, two of the nation's top public affairs experts.  The firm had great early success and within a few years had caught the attention of Omnicom Group Inc. ("Omnicom"), a publicly traded conglomerate of international marketing and communications companies.  Omnicom (by and through certain subsidiaries) began acquiring ownership interests in Mercury in 2003.

14. Omnicom eventually proposed a new business structure that should have allowed Goncharenko and Nunez to expand Mercury into new markets and locations, with the support of Omnicom.  Under this new business structure, which the Parties memorialized in a written agreement, Omnicom agreed that Plaintiffs (and other members of High Stakes) could form, own and operate the Newcos—which would be independent business entities outside of the Mercury structure.  Critically, the parties contemplated that neither Mercury nor any of its affiliates would have any ownership interest in these Newcos initially, but might purchase the Newcos if the Newcos met certain financial performance metrics.

15. In exchange, Omnicom wanted to change their existing profit-sharing arrangement with Plaintiffs (by this point Plaintiffs, and their other partners, were receiving the majority of the profits, due to Mercury's growth and the level of profits) and set up a new structure whereby Omnicom would own a fifty-five percent (55%) majority interest in Mercury (by and through certain subsidiaries). The remaining forty-five percent (45%) minority interest would be held by Plaintiffs and the other members, through Defendant High Stakes.

16. The opportunity to grow their business through the Newcos was a key reason that Plaintiffs agreed to enter into, or continue their employment with Mercury, and allow High Stakes to accept a minority interest in Mercury. However, Omnicom's promises proved largely untrue. Although Omnicom permitted the formation of the London and California Newcos, Omnicom refused to allow Plaintiffs to expand into additional markets and international locations, despite Plaintiffs' contractual right to do so, preventing them from expanding in an industry in which they are top experts.

**B.   Plaintiffs' Termination Of Their Employment With Mercury**

17. After years of broken promises, Plaintiffs terminated their respective employments with Mercury, and now intend to continue conducting their business through the California and London Newcos—as they have for approximately three and eight years, respectively. Omnicom, Mercury's majority owner, has expressly allowed Plaintiffs and other members of High Stakes to utilize the Newcos in this manner since at least 2013. But now that Plaintiffs have resigned from Mercury and plan to operate the Newcos without the Mercury name, Mercury has changed its tune—taking the position that it will rely on highly restrictive covenants to attempt to shackle Plaintiffs from competing with Mercury.

18. The parties' agreements do not condition Plaintiffs' right to operate the Newcos on their continued employment with Mercury, nor do the agreements contain any provisions mandating that the Newcos operate under the Mercury banner. Thus, Plaintiffs are informed and believe that they are permitted and entitled to continue servicing their current clients through the California and London Newcos without violating the restrictive covenant contained in the High Stakes Operating Agreement. Nevertheless, Plaintiffs now believe that Mercury intends to

pressure and intimidate the remaining members of High Stakes into attempting to enforce a restrictive covenant in the High Stakes Operating Agreement in an effort to stop Plaintiffs from conducting business through the Newcos.

### C. The Restrictive Covenant In The High Stakes Operating Agreement Runs Afoul Of California Law

19. Even if Mercury and High Stakes had not previously consented to Plaintiffs independently owning and operating the Newcos in the same way they plan to now, Plaintiffs clearly need the ability to pursue business opportunities in the public relations industry—in which they have worked hard, built prominent reputations, and developed significant relationships—to support themselves and their families.

20. Plaintiffs Nunez and Goncharenko are both signatories to the High Stakes Operating Agreement and respectively hold an approximate 20% and 13% membership interest in High Stakes.

21. The High Stakes Operating Agreement contains a restrictive covenant that prohibits Plaintiffs from engaging in work similar to the work conducted by Mercury for any client or prospective client of Mercury, and from soliciting Mercury's clients and employees, for *two years* following the termination of their employment with Mercury.

22. As residents of and employees working in California, Plaintiffs are entitled to the benefits and protections of California law. And under California Business and Professions Code § 16600, subject to limited exceptions, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

23. The restrictive covenant contained within the High Stakes Operating Agreement is unlawful under California Business and Professions Code § 16600 as an illegal restraint on trade.

24. The High Stakes Operating Agreement's restrictive covenant is not tied to the sale of the goodwill of any business within the meaning of California Business and Professions Code § 16601. Indeed, the restrictive covenant's duration is not tied to the date of any sale of a business, but expressly tied to the termination of Plaintiffs' employments with Mercury. The

1 restrictive covenant is also not limited to clients that were acquired in connection with any sale of
2 any business, but extends to all clients of Mercury.

3  25. The restrictive covenant is also not tied the dissolution of, or termination of an
4 interest in, a limited liability company that carries on a like business within the meaning of
5 California Business and Professions Code § 16602.5.  As alleged in further detail below, High
6 Stakes is not permitted to terminate Plaintiffs' membership interests, but must repurchase them
7 pursuant to the First Amendment. And any repurchase of Plaintiffs' membership units upon their
8 withdrawal from High Stakes is based on a set repurchase price, which does not include any
9 goodwill.  Moreover, High Stakes' purported ability to enforce the restrictive covenant is not
10 conditioned, either explicitly or implicitly, on whether High Stakes continues to carry on any
11 business whatsoever.  Rather, the restrictive covenant is predicated on whether *Mercury* continues
12 its business operations.  The restrictive covenant is therefore unenforceable.

**D.  The Parties' Dispute Over The Repurchase Of Plaintiffs' High Stakes Membership**

15  26. The Fourth Amended and Restated Limited Liability Company Agreement of
16 Mercury, dated December 31, 2013, as amended (the "Mercury Operating Agreement")—which
17 Plaintiffs were each required to *personally* sign despite that neither of them is or was a member of
18 Mercury—provides the following: ". . . Each of the [members of High Stakes i.e. "Principals"]
19 hereby agrees that in the event the employment of any Principal with [Mercury] is terminated for
20 any reason whatsoever such Principal shall immediately withdraw as a member from [High
21 Stakes] . . ."  (Mercury Op. Agr. § 11.3.)

22  27. However, pursuant to the subsequently-executed First Amendment to the High
23 Stakes Operating Agreement, dated December 2019 (the "First Amendment"), a High Stakes
24 member who leaves their employment with Mercury cannot be terminated as a member of High
25 Stakes unless High Stakes repurchases his or her membership interest.  Specifically, the High
26 Stakes Operating Agreement provides as follows: ". . . upon termination of a Member's
27 employment by [Mercury], for any reason, [High Stakes] shall have the right to repurchase, or
28 cause to be repurchased, (i) such Member's Units (each such percentage represented by such Units

7
COMPLAINT

the "Terminated Member's Percentage") from the Member . . . for the applicable purchase price set forth in this Section 9.2 (the "Repurchase Price") . . ."  (High Stakes Op. Agr. § 9.2(a) [emphasis added].)

28. In turn, the High Stakes Operating Agreement, § 9.2(b) provides that ". . . if . . . (ii) the Member voluntarily resigns his or her employment with [Mercury], other than due to Retirement, the Repurchase Price shall be equal to the sum of (1) $1.00 and (2) if an Equity Member, the Member's Capital Contribution, if any, payable quarterly over a five-year period from the Termination Date, with interest accruing at 6% per annum, less any unpaid Capital Contribution due and owing to [High Stakes] from such terminated Member . . ." (*Id.*)

29. Put simply, while the Mercury Operating Agreement provides that Plaintiffs withdraw from High Stakes upon their resignation from Mercury, the High Stakes Operating Agreement does not allow High Stakes to force Plaintiffs' withdrawal without any monetary consideration—nor could it.

30. Additionally, any attempt by High Stakes to force Plaintiffs' withdrawal without fully repurchasing their High Stakes membership would be unenforceable based on well-established common law doctrines, including, but not limited to, constituting an improper forfeiture and lacking consideration.

31. As alleged further below, Plaintiffs are informed and believe that High Stakes disputes its obligations to repurchase Plaintiffs' High Stakes membership, and thus an actual case or controversy exists as to the parties' rights and obligations under the company's Operating Agreement.

## FIRST CAUSE OF ACTION

### Declaratory Relief

**(By Plaintiffs and Newcos against High Stakes and Does 1 to 50)**

32. Plaintiffs and Newcos incorporate herein by reference the allegations contained in Paragraphs 1 through 32, inclusive, as though set forth in full.

33. There is an actual controversy between Plaintiffs, Newcos, and High Stakes relating to Plaintiffs' entitlement to continue conducting business through the Newcos following

1  the termination of Nunez's and Goncharenko's employments with Mercury.  Plaintiffs and
2  Newcos contend that the parties always contemplated Plaintiffs' right to independently own and
3  operate the Newcos, and that Plaintiffs' intention to simply continue doing so now cannot run
4  afoul of any restrictive covenant in the High Stakes Operating Agreement. In the alternative, and
5  assuming that Plaintiffs do not retain the right to continue operating the Newcos in accordance
6  with the parties' prior agreements, Plaintiffs contend that the restrictive covenant provision in the
7  High Stakes Operating Agreement is void and unenforceable, in whole or in part, because it
8  violates California Business and Professions Code § 16600, *et. seq.*, among other common law
9  doctrines.

10    34.    Plaintiffs and Newcos are informed and believe, and based thereon allege, that
11 High Stakes disputes Plaintiffs' and Newcos' contentions as set forth above. Plaintiffs and
12 Newcos are informed and believe, and based thereon allege, that High Stakes contends (i) that
13 Plaintiffs are *not* permitted to continue operating the Newcos following the termination of their
14 employment with Mercury, and (ii) that the restrict covenant in the High Stakes Operating
15 Agreement is valid and enforceable. In light of the foregoing, an actual case or controversy exists
16 between the parties.

17    35.    Plaintiffs and Newcos seek a judicial declaration of Plaintiffs' rights to continue
18 operating the Newcos, free of any threat by High Stakes to enforce an unlawful restrictive
19 covenant, and thereby restrain Plaintiffs from pursuing business in the same manner that Mercury
20 and High Stakes previously agreed to permit. Plaintiffs further seek a judicial declaration that the
21 restrictive covenant in the High Stakes Operating Agreement is void and unenforceable.

22    36.    Moreover, there is an actual controversy between Plaintiffs and High Stakes
23 relating to the consideration High Stakes must pay Nunez and Goncharenko to effectuate their
24 withdrawals from High Stakes.  Nunez and Goncharenko contend that they remain members of
25 High Stakes unless and until High Stakes repurchases Nunez's and Goncharenko's membership
26 units and provides payment for such units in full, and according to the terms of the Section 9.2 of
27 the First Amendment. Plaintiffs are informed and believe, and based thereon allege, that High
28 Stakes disputes Plaintiffs' position.

37. Therefore, Plaintiffs seek a judicial declaration of Plaintiffs' and Defendant's respective rights and duties under the High Stakes Operating Agreement.

## SECOND CAUSE OF ACTION

### (Permanent Injunction)

### (By Plaintiffs against High Stakes and Does 1 to 50)

38. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 38, inclusive, as though set forth in full.

39. Plaintiffs are working under a threat that High Stakes will wrongfully enforce the unlawful restrictive covenant set forth in the High Stakes Operating Agreement.

40. Plaintiffs are informed and believe that High Stakes has and continues to engage in such unlawful conduct for the purpose of injuring Plaintiffs, other employees, the clients they manage, as well as the public at large.

41. High Stakes' actual and/or threatened enforcement of the unlawful restrictive covenant in the High Stakes Operating Agreement, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs, as High Stakes will continue to prevent Plaintiffs from freely pursuing their chosen profession and thus unlawfully restrain Plaintiffs in their trade.

42. Plaintiffs have no adequate remedy at law for the harm suffered and/or threatened, unless enjoined, as an award of monetary damages would not provide an adequate remedy.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For a declaration that Plaintiffs are permitted to continue servicing their current clients through the California and London Newcos without violating any restrictive covenant in the High Stakes Operating Agreement; or, in the alternative, for a declaration that the restrictive covenant in the High Stakes Operating Agreement is void and unenforceable, in whole or in part;

2. For a declaration that High Stakes must fully repurchase Plaintiffs' membership units in High Stakes to effectuate Plaintiffs' withdrawal from High Stakes;

3. For a permanent injunction prohibiting High Stakes from enforcing the restrictive covenant in the High Stakes Operating Agreement, in whole or in part; and

4. For such other and further relief as the Court may deem just and proper.

DATED: October 5, 2021                    KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

By: _____
Gregory P. Korn
Attorneys for Plaintiffs
FABIAN NUNEZ, KIRILL GONCHARENKO, ACTUM CA OPCO LLC, and ACTUM UK OPCO LLC

756070

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850