UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MERCURY PUBLIC AFFAIRS LLC and
MPA HOLDINGS INC.,

                               Plaintiffs,

             -against-

FABIAN NUNEZ and KIRILL
GONCHARENKO,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:21-cv-8300 (VSB)(JLC)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

**EISNER, LLP**
Simon Miller
152 West 57th Street, 48th Floor
New York, New York 10019
(646) 876-2600

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

I.    Factual and Procedural BACKGROUND ........................................................2

    A.    Plaintiff Mercury Public Affairs LLC's Corporate Structure......................2

    B.    Defendants' Employment Λgreements with MPΛ .....................................3

    C.    The Mercury LLC Agreement ...................................................................4

    D.    The Protective Covenants ..........................................................................5

    E.    Defendants File Suit Regarding Enforceability of Restrictive
        Covenants in California where they Reside.................................................5

    F.    Plaintiffs Filed this Suit in New York Despite the First Filed Suit
        in CA in an Effort to Forum Shop ............................................................6

    G.    Plaintiff MPA Acknowledges that Defendants are Still Members of
        High Stakes ...............................................................................................7

ARGUMENT ......................................................................................................................8

POINT I ............................................................................................................................8

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
    THIS ACTION BECAUSE THERE IS NO DIVERSITY ...................................8

    A.    Both Defendants and Plaintiff MPA Are Deemed to be California
        Citizens ....................................................................................................9

    B.    Defendants Remain Members of High Stakes............................................10

POINT II ...........................................................................................................................13

I.    THIS COURT SHOULD DISMISS THIS ACTION IN FAVOR OF
    CALIFORNIA BASED ON THE FIRST FILED ACTION RULE.....................13

CONCLUSION...................................................................................................................19

784021

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.,*
  860 F.Supp. 128 (S.D.N.Y. 1994) .................................................................................14, 18

*Air–Flo M.G. Co., Inc. v. Louis Berkman Co.,*
  933 F. Supp. 229 (W.D.N.Y.1996)..........................................................................................18

*Alltrade, Inc. v. Uniweld Products, Inc.,*
  946 F.2d 622 (9th Cir.1991) ....................................................................................................14

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC,*
  692 F.3d 42 (2d Cir. 2012) ......................................................................................................10

*Blair Holdings Corp. v. Rubinstein,*
  122 F. Supp. 602 (S.D.N.Y. 1954) ............................................................................................9

*Capitol Records, Inc. v. Optical Recording Corp.,*
  810 F.Supp. 1350 (S.D.N.Y.1992) ..........................................................................................16

*Clements v. Castle Mortg. Serv. Co.,*
  382 A.2d 1367 (Del. Ch. 1977) ...............................................................................................12

*Cloyce v. Macy's Dep't Store, No. 05 CIV. 597 LTS/KNF,*
  2006 WL 983931 (S.D.N.Y. Apr. 12, 2006) .............................................................................8

*Colon v. Bernabe,*
  No. 07 CIV. 3369 AJP, 2007 WL 2068093 (S.D.N.Y. July 19, 2007) .....................................9

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976).................................................................................................................14

*Columbia Pictures Indus. v. Schneider,*
  435 F.Supp. 742 (S.D.N.Y.1977) ............................................................................................14

*Cordts-Auth v. Crunk, LLC,*
  479 F. App'x 375 (2d Cir. 2012) ...............................................................................................9

*Domain Associates L.L.C. v. Shah,*
  No. 12921-VLC, 2018 WL 3853531 (Del. Ch. Aug. 13, 2018) (unpublished)......................12

*Edwards v. Arthur Andersen LLP,*
  44 Cal. 4th 937 (2008).................................................................................................................4

784021

*Farrell Lines Inc. v. Columbus Cello–Poly Corp.*,
    32 F. Supp. 2d 118 (S.D.N.Y.1997) ................................................................................16, 17

*First City Nat. Bank and Trust Co. v. Simmons*,
    878 F.2d 76 (2d Cir.1989) ..................................................................................................14

*Ivy–Mar Co. v. Weber–Stephen Prods. Co.*,
    1993 WL 535166, 1993 U.S.Dist. LEXIS 17965 (S.D.N.Y. Dec. 21, 1993) ..............14, 15, 18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ..............................................................................................................9

*Krause v. Forex Exchange Market, Inc.*,
    356 F.Supp.2d 332 (S.D.N.Y.2005) .....................................................................................9

*Nat. Energy Dev., Inc. v. Shakespeare-One Ltd. P'ship*,
    No. CV 4836-CS, 2013 WL 3809250 (Del. Ch. July 22, 2013)...........................................13

*New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*,
    No. 16 CIV. 1395 (PGG), 2017 WL 1157153 (S.D.N.Y. Mar. 25, 2017) .............................8

*New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir.1991) ..............................................................................................14

*Reliance Ins. Co. v. SixStar, Inc.*,
    155 F.Supp.2d 49 (S.D.N.Y. 2001) ...............................................................................16, 17

*Walker v. Res. Dev. Co., L.L.C.*
    791 A.2d 799 (Del. Ch. 2000) ............................................................................................12

*William Gluckin & Co. v. Int'l Playtex Corp.*,
    407 F.2d 177 (2d Cir.1969) ...........................................................................................14, 16

## Statutes

28 U.S.C. § 1332...................................................................................................................1, 8

## Other Authorities

Fed. R. Civ. P. 12(b)(1) ........................................................................................................1, 9

Fed. R. Civ. P. 12(b)(3) ...........................................................................................................1

784021

## PRELIMINARY STATEMENT

Defendants Fabian Nunez and Kirill Goncharenko (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, dated October 7, 2021 (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) based on lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(3) for improper venue based on the previously filed actions pending in California state court involving the same issues and the same parties as set forth in Complaint.[1]

In a twist of irony, in the Complaint, Plaintiffs Mercury Public Affairs LLC ("MPA") and MPA Holdings Inc. ("MHI") (collectively "Plaintiffs") accuse Defendants of forum shopping for commencing actions to invalidate the restrictive covenants in their employment agreements with MPA in their home state of California. In fact, it is Plaintiffs that have misleadingly crafted the Complaint in a transparent attempt to avoid the California courts, presumably fearing the strong public policy against employee restrictive covenants.

Notwithstanding Plaintiffs' own attempt at forum shopping, this action must be dismissed because complete diversity of citizenship is lacking between the Plaintiffs and Defendants such that subject matter jurisdiction under 28 U.S.C. § 1332, the only basis for jurisdiction asserted, is lacking. More specifically, Plaintiff MPA is a limited liability company which, for diversity purposes, has the citizenship of each of its members. MPA is owned by Plaintiff MHI and High Stakes Holdings Co. LLC ("High Stakes"). The members of High Stakes, in turn, include

---

[1] Copies of the Complaints in the two pending actions in California Superior Court are annexed to the accompanying Declaration of Simon Miller, dated October 12, 2021 ("Miller Decl.").

784021

several California residents, including Defendants Nunez and Goncharenko. There being California citizens among both Plaintiffs and Defendants, complete diversity is lacking.[2]

Contrary to any suggestion Plaintiffs may make, Defendants remain members of High Stakes. The plain language of High Stakes' governing operating agreement makes clear that termination of Defendants' employment with MPA did not automatically divest them of their membership interests. Rather, Defendants' membership interests must be purchased under such agreement. No such purchase has occurred or been offered.

In addition to the fatal lack of subject matter jurisdiction, under the well settled "first filed action" rule, this action should be dismissed in favor of the actions previously filed by Defendants (and others) in California state court. It cannot be disputed that the specific issues raised in the Complaint, the applicability and enforceability of the restrictive covenants purporting to restrict Defendants' post-employment business activities, are already being litigated in California between the *very same* parties. Plaintiffs cannot demonstrate any prejudice from having those issues adjudicated in the California courts. Accordingly, well-regarded considerations of judicial economy counsel in favor of this Court dismissing this action in favor of the venue which first took jurisdiction of these same issues.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Plaintiff Mercury Public Affairs LLC's Corporate Structure

Plaintiff MPA is a limited liability company that is majority-owned by Plaintiff MHI, a wholly-owned subsidiary of DAS Holdings, Inc. which is, in turn, a wholly-owned subsidiary of

---

[2] Any allegations in the Complaint regarding certain agreements allegedly having exclusive forum selection clauses are, of course, irrelevant to the question of subject matter jurisdiction. In any event, there is no New York forum selection clause in any applicable agreement covering the matters at issue in the Complaint.

784021

Omnicom Group, Inc. ("Omnicom").  The minority interest in MPA is owned by High Stakes

Holding Co. LLC ("High Stakes"), which is owned by several individual members who are

California residents, including Defendants Goncharenko, Nunez, Stefan Friedman, and Duncan

McFetridge.  (Declaration of Kirill Goncharenko ("Goncharenko Decl.") ¶ 9; Declaration of

Fabian Nunez ("Nunez Decl.") ¶ 7.)



## B.     Defendants' Employment Agreements with MPA

MPA was initially founded in 1999 by Goncharenko and Kieran Mahoney.

(Goncharenko Decl. ¶ 2.)  By 2003, Goncharenko and Mahoney had sold the majority of the

company to Omnicom via subsidiaries.  In connection with that sale, Goncharenko became an

employee of MPA and entered into a written employment agreement (the "Goncharenko

Employment Agreement").  (Goncharenko Decl. ¶ 3, Ex. 1.)  The Goncharenko Employment

Agreement attempts to prohibit Goncharenko from competing with MPA via indefinite and

highly restrictive covenants that prohibit Goncharenko from (i) doing any work similar to the

work conducted by MPA for any client or prospective client of MPA, and (ii) soliciting any

784021

client or employee of MPA—all for two years following the termination of his employment with MPA. (*Id.*, Ex. 1 at § 8(a).)

Goncharenko worked as an employee of MPA for 18 years until he resigned on October 1, 2021. (Goncharenko Decl. ¶ 3.)  Goncharenko is a resident of California where there is a strong public policy against restrictive covenants. *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008).

Defendant Nunez was hired by MPA in 2008 and entered into his own employment agreement with MPA (the "Nunez Employment Agreement").  (Nunez Decl. ¶ 2, Ex. 7.)  Similar to the Goncharenko Employment Agreement, the Nunez Employment Agreement attempts to prohibit competition with a highly restrictive covenant that prohibits Nunez from engaging in work similar to the work conducted by MPA for any client or prospective client of Plaintiff, or soliciting clients or employees (and even goes so far as to prohibit him from using his own last name in connection with a business similar to MPA's) for two years following the termination of his employment with MPA.  (*Id.*, Ex. 7 at § 8(b).)  The Nunez Employment Agreement also contains a forum selection clause designating California as the proper forum with California law governing.  (*Id.*, Ex. 7 at § 16.)

Nunez worked as an employee of MPA for 13 years until he resigned on October 1, 2021. (Nunez Decl. ¶ 2.)  Nunez is also a resident (and former State Assemblyman) of California. (Nunez Decl. ¶ 7.)

### C.    The Mercury LLC Agreement

In 2013—over seven years ago—Goncharenko and Nunez were each required to personally sign the Fourth Amended and Restated Limited Liability Company Agreement of Mercury Public Affairs LLC dated December 31, 2013 (the "MPA LLC Agreement"), despite the fact that neither of them is or was a member of MPA.  (Goncharenko Decl. ¶ 4, Ex. 2; Nunez

784021

Decl. ¶ 3.)  The LLC Agreement also contains a highly restrictive covenant—tied to employment—that purports to prohibit Defendants from engaging in work similar to the work conducted by MPA for any client or prospective client of MPA, and from soliciting MPA's employees, for two years *following the termination of their respective employments* with MPA. (Goncharenko Decl. ¶ 4, Ex. 2 at § 7.3(a).)

The MPA LLC Agreement contains no forum selection clause. (*See* Goncharenko Decl. ¶ 4, Ex. 2.)

### D.   The Protective Covenants

In 2013 and 2015, Goncharenko and Nunez were each required to enter into additional Protective Covenant Agreements with MPA (the "Protective Covenant Agreements").  (*See* ECF No. 1 Exs. G, H, I J.)  The Protective Covenant Agreements are intended to prevent competition with a highly restrictive non-compete provisions that are virtually identical to the non-compete provisions found in the Goncharenko Employment Agreement and Nunez Employment Agreement.  (*See* Goncharenko Decl. ¶ 3, Ex. 1 at § 3; Nunez Decl. ¶ 2, Ex. 7 at § 3.)

Although the Complaint attempts to characterize these restrictive covenants as necessary to protect Plaintiffs' interests in the acquisition of the "Newco" businesses, the restrictive covenants are expressly tied to the term of employment with MPA and clients of MPA during employment—not to the date of the acquisition or clients acquired.

### E.   Defendants File Suit Regarding Enforceability of Restrictive Covenants in California where they Reside

On October 1, 2021, Goncharenko and Nunez filed suit against Plaintiff MPA in the Los Angeles Superior Court in California (the "CA Mercury Lawsuit").  Miller Decl. ¶ 3, Ex. B.)  At issue in the CA Mercury Lawsuit is the enforceability of the restrictive covenants contained in: (i) the Goncharenko Employment Agreement and Nunez Employment Agreement; (ii) the MPA

784021

LLC Agreement; and (iii) the Protective Covenants[3]. (*Id.*)  MPA was personally served with the complaint and summons in the CA Mercury Lawsuit.  (Miller Decl. ¶ 5, Ex. D..)

On October 5, 2021, Goncharenko and Nunez filed a separate suit against High Stakes in the Los Angeles Superior Court (the "CA High Stakes Lawsuit").  (Miller Decl., ¶ 4, Ex. C.)  In the CA High Stakes Lawsuit, Goncharenko and Nunez seek a declaration that: (i) a restrictive covenant in the High Stakes LLC Agreement is unenforceable and (ii) their respective membership interests in High Stakes are not terminated until they have been repurchased.  (*Id.*)

### F.   Plaintiffs Filed this Suit in New York Despite the First Filed Suit in CA in an Effort to Forum Shop

In response to the filing of the CA Mercury Lawsuit, Plaintiffs filed their own suit involving the ***same parties*** and ***exact same issues*** in New York six days later on October 7, 2021.  In a transparent attempt to avoid the laws and courts of Defendants' home state of California—which strongly disfavors restrictive covenants, particularly for employees— Plaintiffs sued in New York on the Protective Covenant Agreements and MPA LLC Agreement, but conspicuously left out the Employment Agreements.[4]

---

[3] Although Defendants have explicitly raised only one of the four Protective Covenant Agreements in the CA Mercury Lawsuit, all four agreements have nearly identical restrictive covenants.

[4] Notably, Plaintiffs appears to have contemplated allegations regarding the restrictive covenants in the employment agreements at some point and then changed their mind, as the agreements are attached as Exhibits D and E to the Complaint but the Exhibits are referenced nowhere in the Complaint.  This seemingly rushed decision further suggests a strategic decision in furtherance of Plaintiffs' forum shopping.

784021

### G.   Plaintiff MPA Acknowledges that Defendants are Still Members of High Stakes

In another tactical maneuver, Plaintiffs allege in their Complaint that both Goncharenko and Nunez are "former members" of High Stakes in a misleading attempt to confer diversity jurisdiction on this Court when there is in fact none.  (ECF No. 1 at ¶¶ 13–14.)

Neither Goncharenko nor Nunez withdrew as members of High Stakes.  (Goncharenko Decl. ¶ 5; Nunez Decl. ¶ 4.)  In fact, immediately after resigning from MPA, Goncharenko notified Kieran Mahoney (the CEO of MPA and member of High Stakes) that, despite Defendants' resignation from employment with MPA, they would continue to hold their respective membership interests in High Stakes.  (Goncharenko Decl. ¶ 5.)  High Stakes has not taken any action to repurchase or otherwise terminate Goncharenko's or Nunez's membership interests. (Goncharenko Decl. ¶ 8; Nunez Decl. ¶ 6.)

Indeed, Plaintiff MPA acknowledged that both Goncharenko and Nunez were still members of High Stakes as of the filing of its Complaint.  Kieran Mahoney, MPA's CEO, told Nunez on October 8, 2021 that Omnicom instructed him to remove Goncharenko and Nunez as members of High Stakes.  (Nunez Decl. ¶ 5.)  Mahoney did not do so.  On October 8, 2021 at 5:51  p.m—several days *after* Defendants had filed the California actions and *after* Plaintiffs had already filed the instant action, MIH sent High Stake's counsel a letter saying purporting to confirm that Defendants' termination of employment also constituted a withdrawal of their membership interests in High Stakes.  (Goncharenko Decl. ¶ 7, Ex. 4: "This letter confirms that, as required by the Mercury Operating Agreement, effective immediately upon their terminations of employment, each of the Terminated Principals has withdrawn as a member of the Class B Member and accordingly, is no longer a member of the Class B Member.")  Notably, this letter

784021

was not sent to Defendants, but rather to Mr. Mahoney, MPA's CEO, and High Stakes' attorney, Jeffrey Davis, who ultimately sent the correspondence to Defendants on October 11, 2021.  (*Id.*)

However, and as discussed below, Goncharenko and Nunez cannot be removed as members of High Stakes until their membership interests are repurchased by High Stakes. Specifically, pursuant to High Stakes' operating agreement, High Stakes has the option to repurchase Defendants' shares according to a precise formula set forth in the High Stakes agreement or let them remain as members:

> Repurchase. Except as provided in Section 9.2(e) below, ***upon termination of a Member's employment by [Mercury] or any Newco, as applicable, for any reason, [High Stakes] shall have the right to repurchase, or cause to be repurchased,*** (i) such Member's Units (each such percentage represented by such Units the "Terminated Member's Percentage") from the Member and (ii) any units, membership interests or other equity interests that such Member owns in any Newco or Affiliate of the Company for the applicable purchase price set forth in this Section 9.2 (the "Repurchase Price")[.]

(Goncharenko Decl. ¶ 8, Ex. 6 at § 9.2(a) (emphases added).) It is undisputed that High Stakes has not yet demanded any repurchase of Defendants' shares much less repurchased such shares, and therefore, Defendants remain members of that entity. (Goncharenko Decl. ¶ 8; Nunez Decl. ¶ 6.)

## ARGUMENT

## POINT I

### I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION BECAUSE THERE IS NO DIVERSITY

"[I]t is well established that '[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.' . . . The standard of proof is 'by a preponderance of the evidence.'" *New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*, No. 16 CIV. 1395 (PGG), 2017 WL 1157153, at *4

8

(S.D.N.Y. Mar. 25, 2017) (citations omitted). "Where diversity has been challenged, a plaintiff must prove by a ***preponderance of the evidence*** that diversity in fact exists." *Cloyce v. Macy's Dep't Store, No. 05 CIV. 597 LTS/KNF*, 2006 WL 983931, at *2 (S.D.N.Y. Apr. 12, 2006) (internal quotation marks omitted) (emphasis added); *see also Blair Holdings Corp. v. Rubinstein*, 122 F. Supp. 602, 603 (S.D.N.Y. 1954) ("The averment of citizenship having been challenged, the plaintiff has the burden of supporting it by competent proof amounting to a preponderance of the evidence.") "It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted) (jurisdiction lacking).

In assessing whether subject matter jurisdictions exist, Courts may consider the pleadings and exhibits attached thereto when deciding whether diversity of citizenship exists for purposes of jurisdiction. *See, e.g., Cordts-Auth v. Crunk, LLC*, 479 F. App'x 375, 379 (2d Cir. 2012) (in ruling on challenge to subject matter jurisdiction, court looked to complaint and attached agreements to determine whether plaintiff was still a member of defendant LLC). "On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court 'may refer to evidence outside the pleadings.'" *Colon v. Bernabe*, No. 07 CIV. 3369 AJP, 2007 WL 2068093, at *4 (S.D.N.Y. July 19, 2007) (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

### A.    Both Defendants and Plaintiff MPA Are Deemed to be California Citizens

It is a well-settled rule that, for diversity purposes, limited liability companies are deemed to have the citizenship of each of their individual members. *See, e.g., Krause v. Forex Exchange Market, Inc.*, 356 F.Supp.2d 332, 336 (S.D.N.Y.2005) ("For jurisdictional purposes, '[a] limited

784021

liability company ["LLC"] is a citizen of every state of which any of its members is a citizen[.]'" (internal citations omitted)).

As set forth in Section I.A, *supra*, Plaintiff MPA is a limited liability company with two members, MHI and High Stakes.  High Stakes itself is an LLC, so the Court must look to the citizenship of the members of High Stakes to determine its citizenship for jurisdictional purposes. *See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).  High Stakes has four members that are residents and therefore citizens of California.  High Stakes having California members results, in turn, in MPA having citizens of California (the same as Defendants) and, accordingly, diversity is lacking.

Specifically, both Goncharenko and Nunez, along with Stefan Friedman and Duncan McFetridge, are all California residents and members of High Stakes.  (Goncharenko Decl. ¶ 9, Nunez Decl. ¶ 7.)  Plaintiffs presumably base the assertion of diversity on the contention that these members forfeited their membership interest in High Stakes upon resigning from their employment with MPA.  As set forth below, however, the relevant agreements and the relevant law make clear that, notwithstanding their employment termination, Defendants retain their membership interest in High Stakes.

## B.    Defendants Remain Members of High Stakes

Though not alleged in their Complaint, Plaintiffs may contend that language in the MPA LLC Agreement requires Defendants to "withdraw" from High Stakes upon termination of their employment with MPA.  (Goncharenko Decl. ¶ 3, Ex. 1 at § 11.3: "Each of the Principals hereby agrees that in the event the employment of any Principal with the Company is terminated for any reason whatsoever such Principal shall immediately withdraw as a member from [High Stakes] and such Principal shall no longer be able to participate in any allocation of any Aggregate

Bonus Amount (commencing with the calendar year in which such termination of employment occurs).")

Plaintiffs' argument is wrong for several reasons.  First, Defendants have not withdrawn from MPA and the language of Section 11.3 is not self-executing.  To the contrary, Defendants have made it clear that they do not intend to withdraw.  Moreover, High Stakes has taken no action, and neither Goncharenko nor Nunez has taken any action, to effectuate a termination of their membership interests.

Second, ***subsequent*** to signing the MPA LLC Agreement in 2013, the members of High Stakes entered into the operative High Stakes LLC Agreement, dated December 18, 2018, amended in 2019.  (Goncharenko Decl. ¶ 8, Exs. 5-6.)  The High Stakes LLC Agreement is the agreement among the members of High Stakes that controls the treatment of membership interests following a resignation by the members from employment with Plaintiff MPA.  The High Stakes LLC Agreement provides as follows with respect to membership interests following resignation from MPA: :

> <u>Repurchase</u>. Except as provided in Section 9.2(e) below, ***upon termination of a Member's employment by [Mercury]*** or any Newco, as applicable, for any reason, ***[High Stakes] shall have the right to repurchase, or cause to be repurchased,*** (i) such Member's Units (each such percentage represented by such Units the "Terminated Member's Percentage") from the Member and (ii) any units, membership interests or other equity interests that such Member owns in any Newco or Affiliate of the Company for the applicable purchase price set forth in this Section 9.2 (the "Repurchase Price")[.]

(Goncharenko Decl. ¶ 8, Ex. 6 at § 9.2(a) (emphases added).)

There is nothing in the High Stakes LLC Agreement that allows for an automatic termination of the members' interest.  Indeed, the High Stakes LLC Agreement requires repurchase of the members' interest ***even if*** the members have been found to have violated restrictive covenants in the LLC Agreement with High Stakes ***or MPA***.[5]  This provision, entered

---

[5] Section 9.2(d) of the High Stakes LLC Agreement states: "If a Member breaches any of his or

784021

into years after the Mercury LLC Agreement is controlling.  Therefore, to effectuate any

withdrawal of Goncharenko or Nunez (or Friedman and McFetridge for that matter), High Stakes

must first repurchase their membership interest pursuant to the High Stakes LLC Agreement and

the formula set forth therein.[6]  (*See* Goncharenko Decl. ¶ 8, Ex. 6 at § 9.2.)  No such repurchase

has occurred or even been offered.

Any argument by Plaintiffs that Goncharenko and Nunez have had their membership

interests in High Stakes forfeited without compensation is therefore contrary to the plain

language of the High Stakes LLC Agreement.  It is also contrary to governing law in Delaware

that makes clear that such forfeiture will not be upheld unless expressly provided for in contract.[7]

Indeed, "the fundamental principle under Delaware law [is] that a majority of the members (or

stockholders) of a business entity, unless ***expressly granted such power by contract***, ***have no***

***right to take the property of other members*** (or stockholders)."  *Walker v. Res. Dev. Co., L.L.C.*,

791 A.2d 799, 815 (Del. Ch. 2000) (emphasis added).  Forfeiture is "highly disfavored by the

courts and contract will not be interpreted as such unless there is ***clear and convincing***

***evidence***."  *Clements v. Castle Mortg. Serv. Co.*, 382 A.2d 1367, 1370 (Del. Ch. 1977); *see also*

*Domain Associates L.L.C. v. Shah*, No. 12921-VLC, 2018 WL 3853531 at *13 (Del. Ch. Aug.

---

her obligations under Section 7.2 of this Agreement or any other applicable protective covenants
between such Member and MPA, including, but not limited to, the protective covenants under
Section 7.3 of the MPA LLC Agreement (as defined below), in addition to other remedies
available to the Company, the Company may (i) if the Member is holding Units, immediately
repurchase the Units for a Repurchase Price of $1.00 or (ii) if the Units have been acquired
hereunder pursuant to this Section 9.2, the Company's obligation to make any remaining
payments of Repurchase Price shall immediately terminate." (Goncharenko Decl. ¶ 8, Ex. 6 at §
9.2(d).)

[6] Notably, this very issue is being litigated in the CA High Stakes Lawsuit.  (Miller Decl., ¶ 4,
Ex. C at ¶¶ 26–31.)

[7] High Stakes is a Delaware limited liability company.

784021

13, 2018) (unpublished) (where "the LLC Agreement is silent as to what payment a member receives after a forced withdrawal" the withdrawing member is entitled to fair value of interest under the LLC Act); *Nat. Energy Dev., Inc. v. Shakespeare-One Ltd. P'ship*, No. CV 4836-CS, 2013 WL 3809250, at *3 (Del. Ch. July 22, 2013) (removal of a general partner does not give remaining partners the right or ability to terminate the partner's interest without compensation). Plaintiffs have not, and cannot, show by "clear and convincing evidence" that the parties intended an automatic forfeiture of any member's interest upon termination of employment with MPA.

In fact, such intent it not only contrary to the language of the High Stakes LLC Agreement, but also contrary to the way that High Stakes has treated every member that has departed in the past.  Indeed, in the past when members have withdrawn from High Stakes after termination of employment with MPA, those members have been paid for their membership interests in High Stakes—no member has even been required to forfeit his or her interest in High Stakes without compensation.  (Goncharenko Decl. ¶ 6.)

Thus, because High Stakes has taken no action to terminate Defendants' membership interests—including the repurchase of such interests—Defendants are unquestionably still members of High Stakes making Plaintiff MPA a citizen of California, thereby destroying diversity.

## POINT II

### I.   THIS COURT SHOULD DISMISS THIS ACTION IN FAVOR OF CALIFORNIA BASED ON THE FIRST FILED ACTION RULE

Even without regard to the fact that Plaintiffs cannot establish diversity jurisdiction, this Court should still dismiss this action based on the well-established "First Filed Action" rule. Here, it is undisputed that the specific issue of the applicability and enforceability of the *very*

784021

*same* restrictive covenants (in both the Protective Covenant Agreements and MPA LLC Agreement) raised in the Complaint are already being litigated in the CA Mercury Lawsuit, with the *very same* parties.  Furthermore, Defendants' entitlement to their respective membership interests in High Stakes is already being litigated in the CA High Stakes Lawsuit. (*See* Miller Decl¶ 4 Ex. C at ¶¶ 26–31.)  Thus, the First Filed Action rule applies and bars attempts to get around Defendants' choice of their home state, which is also the governing law for their employment with MPA.

"Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a "first filed" rule whereby the court which first has possession of the action decides it. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132 (S.D.N.Y. 1994) *citing Ivy–Mar Co. v. Weber–Stephen Prods. Co.*, 1993 WL 535166, *1–2, 1993 U.S.Dist. LEXIS 17965, *2–3 (S.D.N.Y. Dec. 21, 1993) (Leisure, J.).

Generally, there is a strong presumption in favor of the forum of the first-filed suit. *See New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991); *Columbia Pictures Indus. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y.1977).  Indeed, the First Filed Action rule was developed to "serve[ ] the purposes of promoting efficiency [ ] and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir.1991); *see also First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989).  Thus, the suit which is first filed should have priority, "absent a showing of a balance of convenience or special circumstances giving priority to the second suit." *Ivy–Mar*, 1993 WL 535166 at *1 (citing *Simmons*, 878 F.2d at 79); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817  (1976); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969) (citing examples of special circumstances).

14

Here, there is no dispute that Defendants filed the CA Mercury Lawsuit on October 1, 2021 relating to the enforceability of the restrictive covenants and the CA High Stakes Lawsuit on October 4, 2021 regarding the parties' membership interests after their withdrawals, before Plaintiffs filed the instant suit on Oct. 7, 2021. In short, California is already litigating the exact issues raise by Plaintiffs' Complaint.

Plaintiffs cannot satisfy their burden to establish any "special circumstances" to justify departure from the First Filed Action rule. *See Ivy–Mar*, 1993 WL 535166 at *1 (plaintiff bears the burden of demonstrating any special circumstances justifying an exception to the rule). In order to avoid dismissal of its suit, Plaintiffs have suggested that the California lawsuits were a result of forum shopping and thus the first filed rule should not apply, and that certain, but not all of the, agreements call for a New York forum. Plaintiffs' contention, however, fails both factually and legally.

As an initial matter, none of the applicable agreements contains an applicable New York forum selection clause as Plaintiffs contend. First, the MPA LLC Agreement has no forum selection clause at all. (*See* Goncharenko Decl. ¶ 3, Ex. 1.) Second, the New York forum selection clause found in the Protective Covenant Agreements does not apply to the enforceability of the restrictive covenants. Indeed, the forum selection clause expressly excludes paragraph 4, the paragraph addressing enforceability of restrictive covenants:

> Governing Law. This Agreement, and all issues or matters related to this Agreement, shall be governed by, enforced under, and construed in accordance with the laws of the State of New York without regard to any conflicts or conflicts of law principles in the State of New York that would result in the application of the law of any other jurisdiction. ***Except as set forth in paragraph 4***, each party hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York or any court of the State of New York located in New York County ....

(ECF No. 1, Exs. G–J at § 9 (emphasis added).)   Paragraph 4 relates to the enforceability of the restrictive covenants and expressly contemplates actions relating to such being filed in ***any*** court in the United States: "I acknowledge that the Company and I intend to and hereby ***confer jurisdiction to enforce the covenants contained in this Agreement upon the courts of any jurisdiction*** within the geographical scope of such covenants." (*Id.* § 4 (emphasis added).)[8] Therefore, the New York forum selection clause does not apply.

Moreover, the High Stakes LLC Agreement, which governs the membership interests of Defendants in High Stakes, also contains no forum selection clause.

Finally, even if the New York forum selection clause in one out of the several agreements was applicable, California has the strongest interest in determining these issues involving California employees and California labor laws as set forth in detail further below.  Plaintiffs have not moved to dismiss the California action on the grounds that the New York forum selection clause is mandatory (nor could it).  Thus, Plaintiffs should be required to litigate this issue in California.

Given the strong presumption in favor of the First Filed Action rule which was designed precisely to stop the gamesmanship that Plaintiffs are attempting here, there are only a few limited circumstances where the first filed rule will be ignored.  Specifically, a "special circumstances" exception to the first filed rule exists only where "forum shopping *alone* motivated the choice of the situs for the first suit." *William Gluckin*, 407 F.2d at 178 (*citing Rayco Mfg. Co. v. Chicopee Mfg. Co.*, 148 F.Supp. 588 (S.D.N.Y.1957)); accord *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1353 (S.D.N.Y.1992).  However, as

---

[8] Any argument or interpretation that such exemption applies only to Plaintiffs would clearly violate the principal of contractual mutuality.

a matter of law, there can be no valid claim for forum shopping if an agreement calls for suit in the forum in which it is filed. *See Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F. Supp. 2d 118, 125 (S.D.N.Y.1997) (whether or not the clause is enforceable, there is no basis for a claim of forum shopping where a forum selection clause provides for suit in the district chosen by a plaintiff); *Reliance Ins. Co. v. SixStar, Inc.*, 155 F.Supp.2d 49, 54-58 (S.D.N.Y. 2001).

Here, there was nothing improper about Defendants' decision to file in California— where they live and work—and, thus as first to file, their chosen forum should be upheld.  In fact, the Nunez Employment Agreement (which contains one of several unenforceable restrictive covenants and is at issue in the CA Mercury Lawsuit) designates California as the proper forum. Thus, as a matter of law, Defendants' choice to file in California cannot be considered forum shopping. *See Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F.Supp.2d 118, 125 (S.D.N.Y.1997) (whether or not the clause is enforceable, there is no basis for a claim of forum shopping where a forum selection clause provides for suit in the district chosen by a plaintiff). Second, both Defendants are residents of California and were working for MPA pursuant to California Labor Codes so there so question that California has an interest in this matter.  In other words, there are no special circumstances to justify departing from the presumption that the first filed lawsuit (i.e., the CA Mercury Lawsuit) should proceed, and the second lawsuit (i.e., the instant action) should be dismissed.

Finally, while it is true that "if there are no special circumstances justifying an exception to the first-filed rule, courts may still depart from the rule if the balance of convenience warrants transfer of the case to the forum where the second suit was filed," no facts support such a conclusion here. *Reliance Ins. Co. v. SixStar, Inc.*, 155 F.Supp.2d 49, 56 (S.D.N.Y. 2001).

784021

In determining whether to transfer a case, courts are guided by the following factors: (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *800–Flowers,* 860 F. Supp. at 133; *Ivy–Mar*, 1993 WL 535166, at *4. "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000) (citations omitted).

Determining the balance "is essentially an equitable task" left to the Court's discretion. "In performing the analysis the Court must, however, give due deference to the plaintiff's choice of forum which 'should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum' " *Id.* at 57; *see also Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 330 (S.D.N.Y. 1998); *see also Air–Flo M.G. Co., Inc. v. Louis Berkman Co.*, 933 F. Supp. 229, 233 (W.D.N.Y.1996).

Here, Defendants are both California residents, and were working for Plaintiff MPA in California, pursuant to California labor laws. (Goncharenko Decl. ¶ 9; Nunez Decl. ¶ 7.) Their documents are located here as well as the vast majority of witnesses. (Goncharenko Decl. ¶ 10; Nunez Decl. ¶ 8.) Moreover, as a multi-million dollar company, Plaintiffs certainly have more means than Defendants to litigate in California where MPA already does business. Further, California has a much stronger interest in regulating California employees and their agreements than does a New York court. Accordingly, each of these factors weigh in favor of keeping the

784021

lawsuits in California where the litigation was first filed, and none of the factors support the Court changing the presumption in favor of the first filed lawsuit.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety and grant Defendants such other and further relief as this Court may deem just and proper.

Dated: October 13, 2021
      New York, New York

 

**EISNER, LLP**

By: _____
     Simon Miller
152 West 57th Street, 48th Floor
New York, New York 10019
(646) 876-2600
smiller@eisnerlaw.com

*Attorneys for Defendants*

19

784021